# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

      v.                                                    Criminal Action No. 2:13cr20

**DEBORAH D. RADCLIFF,**
       **Defendant.**

## ORDER/OPINION REGARDING PLEA OF GUILTY

This matter has been referred to the undersigned Magistrate Judge by the District Court for purposes of conducting proceedings pursuant to Federal Rule of Criminal Procedure 11. Defendant, Deborah D. Radcliff, in person and by counsel, Zac Dyer, appeared before me on July 3, 2013. The Government appeared by John C. Parr, its Assistant United States Attorney.

The Court determined that Defendant was prepared to enter a plea of "Guilty" to Count One and Count Four of the Indictment. Thereupon, the Court proceeded with the Rule 11 proceeding by first placing Defendant under oath. The Court determined that Defendant's plea was pursuant to a written plea agreement, and asked the Government to tender the original to the Court. The Court asked counsel for the Government to summarize the written Plea Agreement. Defendant stated that the agreement as summarized by counsel for the Government was correct and complied with her understanding of the agreement. The Court **ORDERED** the written Plea Agreement filed.

The Court next inquired of Defendant concerning her understanding of her right to have an Article III Judge hear the entry of her guilty plea and her understanding of the difference between an Article III Judge and a Magistrate Judge. Defendant thereafter stated in open court that she voluntarily waived her right to have an Article III Judge hear and accept her plea and voluntarily consented to the undersigned Magistrate Judge hearing and accepting her plea, and tendered to the Court a written Waiver of Article III Judge and Consent To Enter Guilty Plea Before Magistrate

Judge, which waiver and consent was signed by Defendant and countersigned by Defendant's counsel and was concurred in by the signature of the Assistant United States Attorney appearing.

Upon consideration of the sworn testimony of Defendant, as well as the representations of her counsel and the representations of the Government, the Court finds that the oral and written waiver of Article III Judge and consent to enter guilty plea before a Magistrate Judge was freely and voluntarily given and the written waiver and consent was freely and voluntarily executed by Defendant, Deborah D. Radcliff, only after having had her rights fully explained to her and having a full understanding of those rights through consultation with her counsel, as well as through questioning by the Court. The Court **ORDERED** the written Waiver and Consent to Enter Guilty Plea before a Magistrate Judge filed and made part of the record.

The Court inquired whether the present agreement was the sole offer made to Defendant, to which both counsel replied that it was.

The undersigned had the AUSA appearing review aloud in open court Count One and Count Four of the Indictment, including the elements the United States would have to prove at trial, charging her with embezzlement by a bank employee, in violation of Title 18, United States Code, Section 556 (Count One), and with structuring to evade reporting requirements, in violation of Title 31, united States code, Sections 5324(a)(30 and (d)(2) (Count Four). The undersigned inquired of Defendant whether she understood, to which she replied that she did understand.

The undersigned reviewed with Defendant the statutory penalties applicable to an individual adjudicated guilty of the felony charges contained in Count One and Count Four of the Indictment, the impact of the sentencing guidelines on sentencing in general, and inquired of Defendant as to her competency to proceed with the plea hearing. From said review the undersigned Magistrate

Judge determined Defendant understood the nature of the charges pending against her and understood the possible statutory maximum sentence which could be imposed upon her conviction or adjudication of guilty on Count One was imprisonment for a term of not more than thirty (30) years; understood that a fine of not more than $1,000,000 could be imposed; understood that both fine and imprisonment could be imposed; understood she would be subject to a period of three (3) years of supervised release; and understood the Court would impose a special mandatory assessment of $100.00 for the felony conviction payable on or before the date of sentencing. Defendant also understood the possible statutory maximum sentence which could be imposed upon her conviction or adjudication of guilty on Count Four was imprisonment for a term of not more than ten (10) years; understood that a fine of not more than $500,000 could be imposed; understood that both fine and imprisonment could be imposed; understood she would be subject to a period of at least two (2) years of supervised release; and understood the Court would impose a special mandatory assessment of $100.00 for the felony conviction payable on or before the date of sentencing. Defendant understood that the sentences could be imposed consecutively, and that she therefore faced a total exposure of a maximum term of imprisonment of forty (40) years, a fine of $1,500,000.00, a term of three (3) years of supervised release and a mandatory special assessment of $200.00. She also understood she might be required by the Court to pay the costs of her incarceration and supervised release.

Defendant also understood and agreed that restitution was mandatory, and further agreed to the entry of a restitution order for the full amount of the victim's losses. Defendant further agreed that the loss suffered by the victims was $247,249.88. She also agreed any monetary penalty, including restitution, was due and payable immediately and subject to immediate enforcement.

Importantly, she understood and agreed that if the Court imposes a payment schedule, that payment schedule is only the minimum payment obligation and shall not be the only method or a limitation of the methods available to the United States to enforce the criminal monetary penalty judgment. Defendant finally agreed to any regulatory action to permanently remove her from office and/or prohibit her from participating in the conduct of the affairs of any insured depository institution or depository institution holding company, or any other organization or entity provided in Section 8(e) of the Federal Deposit Insurance Act.

The undersigned Magistrate Judge further examined Defendant with regard to her understanding of the impact of her waiver of her appellate rights as contained in the written plea agreement as follows:

Ct: Did you and your lawyer discuss, and did you understand from that discussion that under 18 USC section 3742, you have a right to appeal any conviction and sentence that you receive from the District Judge for your plea of guilty to the Fourth Circuit Court of Appeals, provided you give notice of that appeal within 14 days of the District Judge's oral pronouncement of your sentence?

Def: Yes, sir.

Ct: Did you also understand that under 28 USC section 2255, you may file a motion collaterally attacking or challenging the sentence or how that sentence is being carried out. Now that motion is commonly called a habeas corpus motion.

Def: Yes, sir.

Ct: Now, under paragraph 13 of your written plea agreement, if you are sentenced within the statutory maximum penalties provided for these two felony charges by the District Judge and

the District Judge does not go outside the sentencing guidelines and the enhancements in the sentencing guidelines, then you give up your right to appeal to the Fourth Circuit Court of Appeals and give up your right to collaterally attack or challenge that sentence by filing a habeas corpus motion. Do you understand?

Def:   Yes, sir.

Ct:    Is that what you intended to do by signing the plea agreement with paragraph 13 in it?

Def:   Yes, sir.

Ct:    And you understand that a court could look at a transcript of today's hearing, the plea agreement, and, if you do file a motion, look at the sentencing transcript, and say, "Well, now, wait a minute. She was sentenced within the guidelines, as adjusted, and she signed off on an agreement, and she verified that at her sentencing hearing – at her plea hearing – and we're therefore going to throw out her appeal or we're going to throw out her collateral attack without ever giving her an opportunity to be heard. Did you understand that?

Def:   Yes, sir.

From which colloquy the Court determined that Defendant understood her appellate rights and voluntarily gave them up pursuant to the written plea agreement.

The undersigned Magistrate Judge further examined Defendant relative to her knowledgeable and voluntary execution of the written plea bargain agreement signed by her on June 20, 2013, and determined the entry into said written plea bargain agreement was both knowledgeable and voluntary on the part of Defendant. The undersigned inquired of Defendant regarding her understanding of the written plea agreement. Defendant stated she understood the terms of the written plea agreement and also stated that it contained the whole of her agreement with the

Government and no promises or representations were made to her by the Government other than those terms contained in the written plea agreement.

The undersigned Magistrate Judge further inquired of Defendant, her counsel, and the Government as to the non-binding recommendations and stipulation contained in the written plea bargain agreement and determined that Defendant understood, with respect to the plea bargain agreement and to Defendant's entry of a pleas of guilty to the felony charges contained in Count One and Count Four of the Indictment, the undersigned Magistrate Judge would write the subject Order and would further order a pre-sentence investigation report be prepared by the probation officer attending the District Court, and only after the District Court had an opportunity to review the pre-sentence investigation report, would the District Court adjudicate the Defendant guilty of the felony offenses contained in Count One and Count Four of the Indictment and make a determination as to whether to accept or reject any recommendation or stipulation contained within the plea agreement or pre-sentence report. The undersigned reiterated to the Defendant that the District Judge may not agree with the recommendations or stipulation contained in the written agreement. The undersigned Magistrate Judge further advised Defendant, in accord with Federal Rule of Criminal Procedure 11, that in the event the District Court Judge refused to follow the non-binding recommendations or stipulation contained in the written plea agreement and/or sentenced her to a sentence which was different from that which she expected, she would not be permitted to withdraw her guilty plea. Defendant and her counsel each acknowledged their understanding and Defendant maintained her desire to have her plea of guilty accepted.

Defendant also understood that her actual sentence could not be calculated until after a pre-sentence report was prepared and a sentencing hearing conducted. The undersigned also advised,

and Defendant stated that she understood, that the Sentencing Guidelines are no longer mandatory, and that, even if the District Judge did not follow the Sentencing Guidelines or sentenced her to a higher sentence than she expected, she would not be permitted to withdraw her guilty plea. Defendant further understood there was no parole in the federal system, although she may be able to earn institutional good time, and that good time was not controlled by the Court, but by the Federal Bureau of Prisons.

The undersigned Magistrate Judge further cautioned and examined Defendant under oath concerning all matters mentioned in Rule 11.

Thereupon, Defendant, Deborah D. Radcliff, with the consent of her counsel, Zac Dyer, proceeded to enter a verbal plea of **GUILTY** to each of the felony charges contained in Count One and Count Four of the Indictment.

The Court then heard the testimony of Government witness FBI Special Agent Fredrick Aldridge, who testified regarding Count One of the Indictment. He testified that in mid to late November, 2012, he received a call from a Mr. Newsome, who was with corporate security for Huntington National Bank. Mr. Newsome advised that a customer, "R.L.," had entered the Weston branch of the bank on November 8, 2012, questioning a partial withdrawal from a CD he did not recall. The withdrawal was made on October 2, 2012, in the amount of $2009.49. The employee with whom he spoke contacted Mr. Newsome, and the bank reviewed the bank security videotapes from the date of the withdrawal. The videotape showed R.L. had not entered the bank that day. The videotape did show Defendant actually creating the check. She subsequently cashed that check. With this information in hand, the bank looked at other cashier's checks made out by Defendant in 2011 and 2012. They learned that customer "CW" had a commercial line of credit from which three

withdrawals were made. SA Aldridge testified Defendant created and cashed those checks for her own personal use. Mr. Newsome confronted Defendant, who admitted taking the RC and CW money because she "needed the money." The bank identified an additional five victims, including one involving a customer's safe deposit box. The total amount of loss to victims was $247,249.88. All the funds were taken from customer's accounts by cashier's checks. All the customer victims were at least 56 years old, with most being elderly, up to 90 years old. The transactions occurred at least twenty times and totaled at least $100,000.00 within a 12-month period. SA Aldridge testified that Huntington National Bank is insured by the FDIC. The bank is located in Weston, Lewis County, West Virginia.

Defendant stated she heard, understood, and agreed with Special Agent Aldridge's testimony regarding her actions.

The Court then heard the testimony of Government witness IRS Special Agent Jason Gandee, who testified regarding Count Four of the Indictment. SA Gandee testified that he was contacted by the United States Attorney's Office. He testified that banking regulations require a bank to file a currency transaction report ("CTR") for any cash transactions over $10,000.00. "Structuring" involves conducting a transaction of over $10,000.00 by splitting the total into separate amounts, each under $10,000.00, to avoid the filing of the CTR. An investigation indicated six different occasions where structuring occurred between October 2011 and October 2012. On those occasions amounts taken were over $10,000.00, but were broken into cashier's checks each under $10,000.00. As to Count Four in particular, on May 2, 2012, $16,407.90 was withdrawn by Defendant from an account belonging to a customer "DB." The transaction was "structured" by Defendant, by cashing a check for $8,203.90 on May 2, 2012, and for $8,203.98 on May 7, 2012.

Defendant stated she heard, understood, and agreed with Special Agent Gandee's testimony regarding her actions.

The undersigned United States Magistrate Judge concludes the offenses charged in Count One and Count Four of the Indictment are supported by an independent basis in fact concerning each of the essential elements of each offense. This conclusion is supported by the testimony of Special Agent Aldridge and Special Agent Gandee.

Upon consideration of all of the above, the undersigned Magistrate Judge finds that Defendant is fully competent and capable of entering an informed plea; Defendant is aware of and understood her right to have an Article III Judge hear and accept her plea and elected to voluntarily consent to the undersigned United States Magistrate Judge hearing and accepting her plea; Defendant understood the charges against her, not only as to the Indictment as a whole, but in particular as to Count One and Count Four of the Indictment; Defendant understood the consequences of her pleas of guilty; Defendant made knowing and voluntary pleas of guilty to Count One and Count Four of the Indictment; and Defendant's pleas are independently supported by the testimony of Special Agent Aldridge and Special Agent Gandee, which provides, beyond a reasonable doubt, proof of each of the essential elements of each of the charges to which Defendant has pled guilty.

The undersigned Magistrate Judge therefore **ACCEPTS** Defendant's pleas of guilty to the felony charges contained in Count One and Count Four of the Indictment and recommends she be adjudged guilty on said charges as contained in Count One and Count Four of the Indictment and have sentence imposed accordingly.

The undersigned further directs that a pre-sentence investigation report be prepared by the adult probation officer assigned to this case.

Defendant is continued on release pursuant to an Order Setting Conditions of Release entered in this matter.

The Clerk of the Court is directed to send a copy of this Order to counsel of record.

DATED: July 3, 2013.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE